**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| UNITED AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-445 (TCB) |
| | ) | |
| AIR LINE PILOTS ASSOCIATION, | ) | |
| INTERNATIONAL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION</u>**

THIS MATTER comes before the Court on Plaintiff/Counter-Defendant United Airlines, Inc.'s ("United" or "Plaintiff") Motion for Summary Judgment (Dkt. 22) and Defendant/Counter-Plaintiff Air Line Pilots Association, International's ("ALPA" or "Defendant") Motion for Summary Judgment (Dkt. 24).[1] For the reasons set forth below, the Court will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Board's final decision.

## I.   PROCEDURAL BACKGROUND

### A.   **Procedural Posture**

Plaintiff filed its complaint pursuant to Section 204 of the Railway Labor Act ("RLA") in this Court on April 22, 2020. (Dkt. 1.) Plaintiff sought to vacate and set aside the arbitration award because "the arbitrator utterly failed to consider or apply the definition of the word

---

[1] The relevant filings before the Court include Plaintiff's Complaint ("Compl.") (Dkt. 1), Plaintiff's Motion for Summary Judgment and supporting memorandum ("Pl's Mem. Supp.") (Dkt. 22), Defendant's Motion for Summary Judgment (Dkt. 24), Defendant's supporting memorandum ("Df's Mem. Supp.") (Dkt. 25), Plaintiff's reply memorandum ("Pl's Reply") (Dkt. 27), and Defendant's reply memorandum ("Df's Reply") (Dkt. 28).

'retaliation' as used in [United's] policy[.]" (Dkt. 1 at 1.) Defendant filed its answer and counterclaim on May 26, 2020. (Dkt. 19.) In its counterclaim, ALPA sought enforcement of the Board's award, as well as costs and attorneys' fees. (Dkt. 19 at 20.) The parties consented to jurisdiction by a magistrate judge on May 21, 2020, and the case was formally referred to the undersigned on May 27, 2020. (Dkts. 16, 20.)

i.    The Instant Motions

Plaintiff filed its motion for summary judgment and accompanying memorandum on July 2, 2020. (Dkt. 22.) Plaintiff requests that this Court vacate the arbitrator's award because it "did not draw its essence from the relevant Company policy and collective bargaining agreement, and thus exceeded the Arbitrator's jurisdiction." (Pl's Mem. Supp. at 1.) Defendant filed its motion for summary judgment and accompanying memorandum on July 29, 2020, requesting enforcement of the arbitrator's award. (Dkts. 24, 25.) Plaintiff replied to Defendant's motion on September 1, 2020. (Dkt. 27.) And, Defendant filed its reply memorandum in support of its cross-motion on September 22, 2020. (Dkt. 28.) The parties argued their cross-motions for summary judgment on October 23, 2020 and the undersigned took this matter under advisement. (Dkt. 29.)

Accordingly, this case is ripe for summary judgment. The parties agree that there are no material facts in dispute. The only issue is whether the Board's decision should be affirmed or vacated.

## II.    FACTUAL BACKGROUND[2]

### A.    The Parties and Key Actors

United is a "carrier by air" under the RLA and provides commercial passenger airline flights in nearly every U.S. state. (Compl. ¶¶ 16-17; *See* 45 U.S.C. §§ 151, 181.) United is headquartered in Chicago, Illinois and incorporated in Delaware. (*Id.*) ALPA is an unincorporated labor union and is the exclusive collective bargaining representative of the pilots employed by United, including Captain Robert E. Lee. (Compl. ¶ 18.)

This case arises out of several incidents between Captain Lee and Flight Attendant Megan Brown, which led to United terminating Captain Lee. Captain Lee graduated from the U.S. Air Force Academy and served in the Air Force for twelve (12) years. (JA at 195-96.) United hired Captain Lee in 1989 as a flight engineer. (Joint Appendix "JA" at 195-96.) He was then promoted to co-pilot on the 757/767 flight. (JA 196.) During his tenure at United, Plaintiff was promoted to captain on the 747, returned as a copilot on the 777, and then became a Captain on flight 737 out of Los Angeles in 2014. (*Id.*)

United hired Flight Attendant Brown in February 2015. (JA at 196.) Flight Attendant Brown often serves as a flight manager, which means, among other duties, she is the lead flight attendant and is the primary point of contact between the pilot crew and the other flight attendants. (*Id.*) As a result of their additional duties, flight managers make an extra $1 per hour. (*Id.*) Flight Attendant Brown is African American. (*Id.*)

---

[2] This Court is bound by the arbitrator's factual determinations and makes no new factual determinations of its own. See *Island Creek Coal Co. v. Local Union 1640*, 28 F. Supp. 2d 944, 997 n.7 (W.D. Va. 1998) (citing *United Paperworkers Int'l. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987) ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.")).

**B.      July 4, 2018 Incident**

Captain Lee and Flight Attendant Brown flew a one-day round-trip between San Francisco and Denver on July 4, 2018. (JA 196.) Flight Attendant Brown was the flight manager for the trip, though she and Captain Lee had never worked together nor met previously. (*Id.*)

As the passengers deplaned in Denver, Captain Lee, Flight Attendant Brown, and another flight attendant stood by the plane's exit. (*Id.*) Captain Lee, who was standing behind Flight Attendant Brown, placed his hands on her shoulders/neck and began rubbing her neck. (*Id.*) Captain Lee stopped rubbing Flight Attendant Brown's shoulders/neck when she flinched and glanced at him. (*Id.*) Captain Lee then removed a piece of lint from the back of Flight Attendant Brown's uniform and, as Flight Attendant Brown reported, said "I'm grooming you like a monkey… like a monkey, picking fleas." (JA 197.)

On the return trip from Denver to San Francisco, Captain Lee complimented a couple wearing Fourth of July t-shirts and offered them free drinks. (*Id.*) He then instructed Flight Attendant Brown to deliver the couple free drinks, as well as any other passengers wearing red, white, and blue, to which Flight Attendant Brown replied, "I'm not going to do that." (*Id.*) Captain Lee then asked, "What is this, some sort of protest?" (*Id.*) Flight Attendant Brown replied, according to Captain Lee, that she hated America. (*Id.*) Captain Lee proceeded to ask Flight Attendant Brown to name a country better than America, and she said, "all of them." (*Id.*) Captain Lee then returned to the cockpit and deemed Flight Attendant Brown's conduct to be insubordinate.

Captain Lee and Flight Attendant Brown did not interact for the remainder of the flight. (*Id.*) Captain Lee did, however, ask another flight attendant whether the couple wearing Fourth of July clothing received their free drink, and they had. (*Id.*) The flight attendant also informed

4

Captain Lee that Flight Attendant Brown was calling him a racist. (*Id.*)

Before landing in San Francisco, Captain Lee requested to meet with Flight Attendant Brown's supervisor. (*Id.*) Accordingly, Miriam Swinehart, Flight Attendant Brown's supervisor, spoke with both Captain Lee and Flight Attendant Brown upon landing. (*Id.*) Captain Lee recounted Flight Attendant Brown's insubordination, and Flight Attendant Brown told Ms. Swinehart about Captain Lee touching her and his comments. (JA at 197-98.) Pursuant to Ms. Swinehart's request to submit a written complaint, Flight Attendant Brown emailed Ms. Swinehart on July 5 detailing the incident. (JA at 81, 198.)

**C.     July 11, 2018 Incident**

Captain Lee flew on another flight on July 11, 2018 with Flight Attendant Anthony James. (*Id.*) Flight Attendant James' employee number was a few digits from Flight Attendant Brown's, and Captain Lee surmised the two had likely been trained together. (*Id.*) Captain Lee asked Flight Attendant James whether he attended training with Flight Attendant Brown and how she did. (*Id.*) When Flight Attendant James relayed this conversation to Flight Attendant Brown, she submitted another complaint via email to Colleen Roth, an HR representative in San Francisco. (*Id.*)

**D.     United's Investigation of the July 4, 2018 and July 11, 2018 Incidents**

United conducted a fact-finding investigation of Flight Attendant Brown's two complaints on July 25, 2018. (*Id.*) Captain Shawn Cook, Assistant Chief Pilot for San Francisco, led the investigation, and Captain Lee attended with ALPA representative, Captain Noel Ojeda. (*Id.*) During the investigation, Captain Lee admitted to touching Flight Attendant Brown, but claimed he was trying to help her by removing lint from her uniform. (*Id.*) Captain Lee also admitted he approached Flight Attendant James to discuss Flight Attendant Brown. (*Id.*) Captain

Cook ultimately concluded that Flight Attendant Brown's two complaints were substantiated. (JA at 199.)

Following the investigation, Captain Cook recommended that United issue Captain Lee a non-disciplinary letter of counsel. (JA at 199.) On October 30, 2018, Captain Lawrence Ellis, San Francisco's Chief Pilot, held a counseling session with Captain Lee and his ALPA representative. (*Id.*) During this session, Captain Ellis read and discussed with Captain Lee the Working Together Guidelines (the "Guidelines") provisions about unwelcome physical contact and offensive behavior as it relates to a person because of a protected characteristic. (*Id.*) Captain Lee agreed to read the remainder of the Guidelines on his iPad. (*Id.*)

Captain Ellis then issued Captain Lee a letter of counsel on November 5, 2018. (JA at 92, 199.) The letter was to remain in effect for 18 months and serve as a record of the October 30, 2018 counseling meeting. (*Id.*) Thereafter, Captain Lee tried to avoid San Francisco trips for which he thought Flight Attendant Brown would likely be scheduled. (JA at 200.) Captain Lee was also out of the workplace entirely recovering from a shoulder injury from October to December 2018. (*Id.*)

**E.    January 16, 2019 Incident**

On January 16, 2019, Captain Lee was traveling to Houston for a 7-hour flight to Vancouver on which he was to be pilot in command. (JA at 200.) Two hours before the flight, Captain Lee noticed Flight Attendant Brown was the scheduled flight manager. (*Id.*) Captain Lee then sent Flight Attendant Brown the following in an email:

> Subject: Heads Up
>      I just noticed that you are working as FM on my next flight You might want to do something else.
>      Bob

(JA at 83, 93, 200.)

At the time she received the email, Flight Attendant Brown had not been aware this was Captain Lee's flight. (*Id.*) Upon landing in Houston, Flight Attendant Brown immediately went to Tammy Holt, a senior HR manager at United, and reported that she received an intimidating and threatening email from Captain Lee. (*Id.*) Ms. Holt discussed the reported email with the chief pilots in Houston and San Francisco, and they decided to remove Captain Lee from the scheduled flight. (JA at 201.)

**F.      United's Investigation of the January 16, 2019 Email and Termination**

Captain Cook and corporate security investigator, Kim Philips, interviewed Captain Lee on February 28, 2019. (JA at 201.) During the interview, Captain Lee maintained that he sent the email because of his "history" with Flight Attendant Brown, which involved a number of false accusations in her prior complaints. (*Id.*) Additionally, Captain Lee said that Flight Attendant Brown did not like him and would not be willing to work with him. (*Id.*)

Following the interview, on April 25, 2019, Captain Cook issued Captain Lee a letter of charge proposing discipline based upon several company policies including the Protection Against Retaliation Policy, Dignity and Respect Policy, and Professionalism and Responsibility Policy in the Guidelines. (JA at 53-54, 88-89, 201.) Captain Ellis then held another disciplinary hearing on May 8, 2019, which Captain Cook, Captain Lee, and Captain Lee's ALPA representative attended. (JA at 202.)

Captain Ellis decided to terminate Captain Lee in a written decision dated May 23, 2019. (JA at 55-60, 202.) Notably, Captain Ellis determined that Captain Lee's email constituted retaliation:

> After reviewing all the evidence presented it is clear to me that your email dated January 16, 2019 to F/A Brown was sent with the intent to have her change assignments on a flight that she was scheduled to operate…While you may not have been aware of the financial cost of demotion or reassignment… You should have known the negative impact a demotion would convey to F/A Brown and her fellow Flight Attendants.

(*Id.*) Captain Ellis further found that:

> The evidence presented to me clearly demonstrates that you retaliated in an unprofessional manner towards a fellow employee because she had participated in an investigation against you…Additionally, the evidence demonstrated that you violated the Working Together Guidelines regarding Dignity and Respect by not treating F/A Brown with mutual respect, Professionalism by communicating with her in an intimidating manner, and Responsibility for not taking any personal responsibilities for your actions and trying to shift the blame onto F/A Brown.

(*Id.*)

Captain Lee appealed his termination to Senior Vice President of Flying Operation, Captain Bryan Quigley, who affirmed the termination. (JA at 61-63, 202.) Captain Quigley opined that "United's Protection Against Retaliation Policy expressly prohibits retaliation against anyone filing a complaint and that is exactly what [Captain Lee] did in sending an intimidating email on January 16, 2019 to Ms. Brown." (*Id.*)

## G.     The Board's Decision

Captain Lee then appealed his termination decision to the United Airlines Pilots System Board of Adjustment ("the Board"). (JA at 195.) Neutral arbitrator Herbert Fishgold held an arbitration hearing on October 2, 2019 and both parties had the opportunity to present witnesses and documentary evidence and to submit a post-hearing brief. (*Id.*) The Board issued a final award on February 26, 2020. (JA at 195-215.)

The sole stipulated issue before the Board was "whether United Airlines had just cause to terminate the employment of Captain Robert E. Lee, and if not, what should be the remedy." (JA at 204.) The Board was composed of five members: two members from United, two members

from ALPA, and one neutral arbitrator. (JA at 215.) The two United Board members dissented from the Board's final decision, voting to uphold Captain Lee's termination. (*Id.*) The two ALPA members, meanwhile, voted to overturn Captain Lee's termination. (*Id.*) Accordingly, Arbitrator Fishgold's vote was the deciding one. (*Id.*) Arbitrator Fishgold rescinded Captain Lee's termination and imposed a 60-day suspension. (JA at 214.) The arbitrator ordered that Captain Lee be reinstated with back pay and benefits, as of the completion of his suspension. (*Id.*) Additionally, he ordered that Captain Lee attend a training session on the Guidelines, and if Flight Attendant Brown was willing, have a meeting before a United facilitator so they could understand what was expected of them should they be scheduled on a flight together in the future. (*Id.*)

The arbitrator's analysis began by discussing United's Protection Against Retaliation Policy, which states that: "retaliation can include any negative job action such as demotion, discipline, termination, salary reduction, or job or shift reassignment. But retaliation can be subtler." (JA 205-06.) Arbitrator Fishgold then discussed the elements of unlawful retaliation, which he explained consists of three elements: "(1) An employee's participation in a protected activity, generally a complaint of discrimination or harassment; (2) An adverse action taken by the Employer/Manager against the employee; and (3) A causal connection between the protected activity and the adverse action." (JA at 207.) And, "an adverse action includes anything that could be reasonably likely to deter protected activity, even if there is no tangible effect on a person's employment." (*Id.*)

*First*, Arbitrator Fishgold determined that United failed to show that Captain Lee had the authority change Flight Attendant Brown's flight assignments, or that he used his authority to do so. (JA at 207-08.) Further, Captain Lee took no steps to actually effectuate a scheduling change.

(JA at 208.)

*Second*, the arbitrator found that "[e]ven if [Captain] Lee had the authority to force a change in assignments for flight attendants… the pay premium ($1/hour) and responsibilities of the [flight manager] do not elevate the temporary change into a negative job action as required by the Working Together Guidelines." (JA at 208-09.) In reaching this conclusion, Arbitrator Fishgold considered case law discussing what qualifies as a "significant alteration to the employee's duties" and Flight Attendant Brown's testimony that Captain Lee's email would not impact her promotion opportunities at Untied. (JA at 208.)

*Third*, the arbitrator determined that the protected activity was not a "but for" cause of any illegal adverse employment action. (JA at 209.) The email did not evolve from Flight Attendant Brown's prior complaints, but rather from unresolved issues between Flight Attendant Brown and Captain Lee, which Flight Attendant Brown conceded would make working together uncomfortable. (JA at 210.)

Based on the above elements, the arbitrator found that "the record does not prove a prima facie case of unlawful retaliation in violation of [United's] Protection Against Retaliation policy." (JA at 212.) Accordingly, Arbitrator Fishgold found that Captain Lee's termination based upon the email did not constitute just cause. (*Id.*)

But, Arbitrator Fishgold found that Captain Lee did violate United's Guidelines regarding Dignity and Respect because, "[e]ven if it was not [Captain] Lee's intent, [the email] was written in such a way that the words could be interpreted as intimidation and threatening to Ms. Brown." (JA at 213.) Accordingly, the Board imposed a 60-day suspension in lieu of Captain Lee's termination and ordered Captain Lee to attend a training session on United's Guidelines. (JA at 214-15.)

III.     STANDARD OF REVIEW

**A.     Summary Judgment**

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted).  The moving party bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant."  *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Where there is conflicting evidence, the court must credit the evidence of both sides and acknowledge that there is a genuine issue of material fact that cannot be resolved by summary judgment.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1868-69 (2014) (stating that summary judgment is inappropriate where each side has put forward competent evidence that raises a dispute about a material fact).

Here, both parties concede that there are no outstanding issues of material fact. Accordingly, this case is ripe for summary judgment.

**B.**     **Judicial Review of Arbitrator's Decision under the RLA**

"The effectiveness of any pro-arbitration policy is dependent, in the first instance, on a limited scope of judicial review of the arbitrator's determination." *Richmond, Fredericksburg, & Potomac R. Co. v. Transp. Comms. Int'l Union.*, 973 F.2d 276, 278 (4th Cir. 1992) (quoting *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 360 (1971)). As such, decisions of system boards set up pursuant to the RLA "are subject to a unique standard of review which is 'among the narrowest known to the law.'" *Norfolk and W. Ry. Co. v. Transp. Comms. Int'l Union*, 17 F.3d 696, 699 (4th Cir. 1994) (citing *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978)). A court "may not overrule an arbitrator's decision simply because it believes its own interpretation of the contract would be a better one." *W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 764 (1983); *see also Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). And, "[e]very presumption is in favor of the validity of the award." *Richmond, Fredericksburg, & Potomac R. Co.*, 973 F.2d at 278 (quoting *Burchell v. Marsh*, 58 U.S. (17 How.) 344, 351 (1855)).

Under the RLA, an order of the Board is "conclusive on the parties[.]" 45 U.S.C. § 153(p)-(q). An arbitrator's decision, however, must "draw its essence" from the parties' agreement. *Island Creek Coal Co. v. Local Union 1640*, 28 F.Supp. 2d 994, 997 (W.D. Va. 1998) (citing *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960)). But, district courts only have the authority to set aside Board orders *if* the Board: (1) fails to comply with the requirements of the RLA; (2) issues an order that does not conform to matters within the scope of its jurisdiction; or (3) issues an order by way of fraud or corruption. 45 U.S.C. § 153(p)-(q). Still, "[t]he test is not error; it is *ultra vires*." *Norfolk and W. Ry. Co.*, 17 F.3d at 699 (internal citations omitted). Accordingly, the only question for a district court is

12

"whether the arbitrators did the job they were told to do – not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Richmond, Fredericksburg, & Potomac R. Co.*, 973 F.2d at 281; *see also Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). So long as the arbitrator makes "a good faith effort to apply the law as he perceives it" or "there is some rational way the arbitrator's interpretation can be construed from the Agreement," this Court may not disturb an arbitrator's decision. *Richmond, Fredericksburg, & Potomac R. Co.*, 973 F.2d at 281; *see also Island Creek Coal Co.*, 28 F. Supp. 2d at 997.

## IV.    ANALYSIS

Based upon the above standard, the only issue before the Court is whether the arbitrator's award was within the scope of the Board's jurisdiction. Plaintiff contends that the Board's award must be vacated because "the Arbitrator exceeded the scope of his jurisdiction by failing to interpret or apply the controlling Retaliation Policy, and instead applying an external law standard that is contrary to and significantly narrower than the controlling retaliation policy." (Pl's Mem. Supp. at 15.) Plaintiff alleges that the arbitrator exceeded his jurisdiction by (1) ignoring United's Protection Against Retaliation Policy; and (2) applying external law, namely the standard for unlawful retaliation. (Pl's Mem. Supp. 15-20, 20-23.) Defendant contends that the Arbitrator acted within his jurisdiction because (1) the Guidelines are not a part of the United Pilot Agreement (UPA) or a binding contract, and so the arbitrator was not bound to them; (2) the arbitrator properly determined Captain Lee did not retaliate against Flight Attendant Brown because the requirements of unlawful retaliation and the Guideline's definition retaliation are similar; (3) the Board properly referred to external federal law; and (4) United waived its arguments by not presenting them during the arbitration. (Df's Mem. Supp. at 24-29, 29-34, 34-

13

41, 44-47.) For the reasons stated below, the Court finds that the Board acted within its jurisdiction and affirms the arbitrator's decision.

**A.      The Arbitrator Acted within the Board's Jurisdiction**

The crux of Plaintiff's argument is that the arbitrator incorrectly applied the elements of unlawful retaliation when he should have applied the broader Guidelines definition of retaliation. The arbitrator applied the Equal Employment Opportunity Commission's (EEOC) definition of "unlawful retaliation," which requires:

> (1) An employee's participation in a protected activity, generally a complaint of discrimination or harassment; (2) An adverse action taken by the Employer/Manager against the employee; and (3) A causal connection between the protected activity and the adverse action. The EEOC has further defined that an adverse action includes anything that could be reasonably likely to deter protected activity, even if there is no tangible effect on a person's employment.

(JA at 207.) Further, United's Guidelines' Protection Against Retaliation Policy is as follows:

> Retaliation has the effect of making people afraid to complain or to assert their rights under the law of United Airlines' policy. Retaliation can include any negative job action, such as demotion, discipline, termination, salary reduction, or job or shift reassignment. **But retaliation can also be more subtle.** United expressly prohibits retaliation against any person for filing a complaint or against any person who participates in an investigation under this policy. (emphasis added)

(JA at 203.) Plaintiff's argument fails, however, because (1) the arbitrator applied both retaliation standards and thoroughly applied the law he believed applied; and (2) Plaintiff's cited case law is inapposite.

> i.      <u>The Arbitrator Explained the Standard He Used and Considered Both Definitions of Retaliation</u>

Plaintiff's argument fails because the arbitrator applied both standards in his decision, and he was free to apply either standard so long as he made "a good faith effort to apply the law"

as he understood it. *Richmond, Fredericksburg, & Potomac R. Co.*, 973 F.2d at 281.[3]

Under the "Authority" section of his determination, the first item Arbitrator Fishgold identified was the Protection Against Retaliation Policy. (JA at 202-03.) Arbitrator Fishgold again discussed the Protection Against Retaliation Policy in examining Captain Lee's January 16, 2019 email, which was the cause for his termination. (JA at 205.) The arbitrator then proceeded to discuss whether the email did, in fact, constitute retaliation, noting that Captain Cook did not specifically go over the Protection Against Retaliation Policy with Captain Lee in the July 25, 2018 fact-finding investigation (JA at 206), and that Captain Ellis did not discuss retaliation in his letter of counsel (JA at 207). Additionally, Arbitrator Fishgold discussed Captain Lee's intent behind the email throughout his opinion, ultimately concluding that Captain Lee "intended to lessen the tension" between himself and Flight Attendant Brown and did not send the email as a result of the complaints she previously filed against him. (JA at 18.)

It is only after 13 pages that Arbitrator Fishgold discussed the EEOC definition of retaliation and applied its elements to the case at hand. (JA at 207.) He supported his application of the EEOC retaliation elements with facts from the record and case law showing that Captain Lee's "email did not meet the required elements of a materially adverse action." (JA at 208-13.) Further, the arbitrator noted that Flight Attendant Brown testified that there was not "anything about the email that would impact [her] promotion opportunities" at United. (JA at 208.) And, he again concluded that the $1/hour pay differential between flight managers and flight attendants did "not elevate the temporary change into negative job action as required by the Working

---

[3] This standard is so deferential that the Court need not go so far as to address whether United's Guidelines, including the Protection Against Retaliation Policy, are part of the United Pilot Agreement (UPA), which is the collective bargaining agreement in this case. This Court's analysis is confined to whether the arbitrator's decision was within his jurisdiction, not whether he interpreted the law properly.

Together Guidelines." (JA at 209.)

Most notably, Arbitrator Fishgold's determination that Flight Attendant Brown's prior complaints against Captain Lee did not "cause" Captain Lee to send the email renders Plaintiff's arguments untenable. (JA at 209.) As Defendant noted during oral argument, both the EEOC retaliation standard and the Guidelines' Protection Against Retaliation standard require the protected activity (here, Flight Attendant Brown's complaints) to be the cause of the adverse job action (here, Captain Lee's email). Specifically, the Guidelines' Protection Against Retaliation Policy "expressly prohibits retaliation against any person for filing a complaint or against any person who participates in an investigation under this policy." (JA at 203). The arbitrator determined that Captain Lee sent the email because "he thought she would be uncomfortable flying with him" and because they would likely be alone together in the cockpit at some point during the flight. (JA at 210.) And, no one at United had previously instructed Captain Lee not to contact Flight Attendant Brown. (JA at 212.) Regardless of which standard the arbitrator chose to apply, "there is some rational way the arbitrator's interpretation can be construed from the Agreement." *Richmond, Fredericksburg, & Potomac R. Co.*, 973 F.2d at 281; *see also United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 ("Arbitrators have no obligation to the court to give reasons for an award.").[4]

Although the arbitrator acknowledged that regardless of Captain Lee's intent, the email "was written in such a way that the words could be interpreted as intimidation and threatening" to Flight Attendant Brown, he thoroughly explained the standard he applied and reasoning for his

---

[4] United asserts that the "but for" causation requirement in the unlawful retaliation standard is somehow different and inapplicable to the causation requirement in the Guidelines' standard. (Pl's Reply at 19-20.) Although the Court does not see how these facts could meet the "but for" unlawful retaliation standard and not the Guidelines' causation standard, it is of no matter which causation requirement the arbitrator applied given the deferential standard of review by which the Court is bound.

decision. (JA at 213.) The arbitrator explained that, "[w]hile the Company regarded the January 16, 2019 email as retaliation for Ms. Brown's previous complaints against him, the application of the elements required to prove a prima facie violation of unlawful retaliation fail to support that claim." (JA at 211-12.) Arbitrator Fishgold therefore applied the law as he interpreted it, and because his attempt to do so was well-reasoned and in good faith, this Court lacks the authority to inquire further into the merits of this case.

ii.         <u>Plaintiff's Case Law is Inapposite</u>

Plaintiff premises its argument that the arbitrator "did not do his job" because he applied the EEOC retaliation standard on two cases that do not apply to the case at hand. First, Plaintiff cites *Clinchfield Coal Co. v. District 28, United Mine Workers of Am. & Local Union No. 1452* ("*Clinchfield*") for the proposition that the arbitrator ignored "critical" language that "might reasonably require an opposite result." 720 F.2d 1365 (4th Cir. 1983). (Pl's Mem. Supp. at 2, 17.) Second, Plaintiff cites to *Mountaineer Gas Co. v. Oils, Chem. & Atomic Workers Int'l Union* ("*Mountaineer*"), which it incorrectly says required the arbitrator to apply only the Protection Against Retaliation Policy standard simply because it was "a valid and proper policy…promulgated by an employer pursuant to a collective bargaining agreement." 75 F.3d 606 (4th Cir. 1996). (Pl's Mem. Supp. at 2, 18.) The Court finds that Defendant's cited case, *Westvaco Corp. v. United Paperworkers Int'l Union, AFL-CIO ex. Rel. Local Union 676* ("*Westvaco*") is the proper controlling precedent. 171 F.3d 971 (4th Cir. 1999).

a.         <u>*Clinchfield*</u>

In *Clinchfield*, the Fourth Circuit upheld the district court's judgment vacating the arbitrator's award because it "did not draw its essence from the labor agreement." 720 F.2d at 1367. Specifically, the Court found that the arbitrator "ignored or overlooked and failed to

interpret the words 'coal mining operations' as used in the collective bargaining agreement." *Id.* at 1368. The *Clinchfield* court proscribed an arbitrator "shield[ing] his award simply by the ruse of stating an issue without discussing it." *Id.* at 1369.

According to Plaintiff, *Clinchfield* requires this Court to vacate the Board's award because the arbitrator ignored the Protection Against Retaliation Policy. (Pl's Mem. Supp. at 2, 17-19.) Unlike in *Clinchfield*, however, the arbitrator here did not "fail[] to discuss critical contract terminology…which might reasonably require an opposite result." *Id.* Rather, the arbitrator here, as discussed above, identified the Protection Against Retaliation Policy as a controlling authority, thoroughly discussed the standard under the Policy, and explained the EEOC standard he applied. *See Supra* Part i. Further, the sole stipulated issue before the Board in this case was "whether United Airlines had just cause to terminate" Captain Lee. (JA at 204.) The arbitrator clearly identified this issue and reached a determination of just cause in his opinion. Accordingly, Plaintiff cannot justifiably argue that Arbitrator Fishgold stated an issue or critical language without discussing it, as in *Clinchfield*.

Further, as Defendant properly notes, the Fourth Circuit has only applied *Clinchfield* where an arbitrator's decision "require[s] an opposite result from that reached by the by the arbitration panel." *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 861-62 (4th Cir. 2010). In *MCI Constructors*, the Fourth Circuit reiterated that an arbitration award "does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has misread the contract" and a district court cannot vacate an arbitration decision because an arbitrator did not address every provision of relevance. *Id.* at 862; *see also Brown & Pipkins, LLC v. Service Employees Int'l Union*, 846 F.3d 716, 724-25 (4th Cir. 2017) ("To require an arbitrator to address every single provision of any relevance whatsoever in a contract would be to

require an arbitrator's award to be free of ambiguity – a standard we have rejected."); *Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 12 (4th Cir. 2001) ("Arbitrators ordinarily are under no obligation to explain the reasons for an award… In *Clinchfield*, the underlying problem…was that the result seemed impossible to square with certain provisions of the contract").[5]

Accordingly, *Clinchfield* does not apply here because the Board's application of the EEOC standard for retaliation does not require a different outcome. Nothing in the Protection Against Retaliation Policy's "retaliation can be more subtle language" requires an opposite result from that which the Board reached. And, as discussed above, *Clinchfield* does not even require the arbitrator to have discussed the Policy at all, let alone in the level of detail the arbitrator discussed both standards.

b.      _Mountaineer_

In *Mountaineer*, the Fourth Circuit upheld the district court's vacation of the arbitration award because the award failed to draw its essence from the collective bargaining agreement. 75 F.3d 606 (4th Cir. 1996). The employee in *Mountaineer* was terminated for failing a drug a test, and the company policy expressly stated that any employee who failed a drug test would "be promptly discharged." *Id.* at 609. The arbitrator disregarded this express policy term because he personally had "great difficulty with a substance abuse policy that permits rehabilitation for voluntary assistance but terminates without recourse any who is 'caught' by a positive drug test."

---

[5] Plaintiff cites *Piedmont Airlines, Inc. v. ALPA* to suggest that the U.S. District of Maryland has applied *Clinchfield* in a way that would support its argument. No. GLR-16-3263, 2017 WL 11511605 (D. Md. Sept. 29, 2017). (Pl's Mem. Supp. at 17-18.) *Piedmont*, however, differs from the case at hand because it concerned "critical contract language" that was, in fact, "critical" because it went to the central issue before the Board. *Id.* at *4. Further, *Clinchfield* applied because the Board "provided <u>no</u> interpretation of the critical contract provisions." *Id.* at 5 (internal citations omitted). As explained above, the sole issue before the arbitrator in this case was whether United had just cause to terminate Captain Lee. And, the arbitrator did discuss the Guidelines Protection Against Retaliation Policy even though it was not "critical contract language."

*Id.* at 610. But, the Fourth Circuit determined that the arbitrator should have enforced the company's clear drug policy. *Id.* "A valid and proper policy promulgated by an employer pursuant to a collective bargaining agreement is enforceable; it need not be specifically incorporated by reference into the collective bargaining agreement." *Id.*

This case, however, differs greatly from *Mountaineer*. Arbitrator Fishgold did not choose to apply the EEOC retaliation standard over the Protection Against Retaliation Policy standard because he personally disagreed with it. Rather, he applied the EEOC standard because his good faith interpretation of the law and Guidelines required him to do so. Unlike in *Mountaineer*, the arbitrator here did not "create an individualized exception" to a policy or bypass the agreement's language "to implement his own brand of industrial justice." *Id.*

Further, as Defendant correctly noted, courts in this circuit and beyond have only applied *Mountaineer* where a company's policy requires immediate termination. *See E. Assoc. Coal Corp. v. United Mine Workers of Am.*, 66 F. Supp. 2d 796, 803 (S.D. W. Va. 1998) (enforcing award reinstating employee), *aff'd*, 188 F.3d 501 (4th Cir. 1999), *aff'd*, 531 U.S, 57 (2000); *see also Trailmobile Trailer, LLC v. Int'l Union of Electronic, Elec., Salaried, Mach. and Furniture Workers, AFL-CIO; Local Union No. 1149*, 223 F.3d 744, 747-48 (8th Cir. 2000) ("when an agreement does not define just cause and does not include an explicit provision for offenses that will lead to termination, a reviewing court must defer to an arbitrator's interpretation"); *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 897 (2d Cir. 1997) (declining to apply *Mountaineer* because violation of the rules at issue would not "automatically constitute just cause for dismissal"). Accordingly, Plaintiff's reliance on *Mountaineer* to support to its proposition that the arbitrator was bound to apply only the Protection Against Retaliation Policy standard is untenable.

c.     _Westvaco_

In _Westvaco_, the Fourth Circuit overturned the district court's vacation of the arbitrator's decision reinstating the employee. 171 F.3d 971 (4th Cir. 1999). The company terminated the employee for sexual harassment and the arbitrator reinstated the employee because he did not find just cause for the termination. _Id._ at 972. The collective bargaining agreement explicitly stated that "no arbitrator shall have the power to substitute his or her own judgment for that of the Management," and the Court found that by reinstating the employee, the arbitrator "plainly substituted his own judgment for that of management." _Id._ at 973, 975. Still, the Court found that the arbitrator acted within his jurisdiction because he "could plausibly conclude that the [collective bargaining agreement] permitted him to do so" based upon the arbitrator's own findings and discussion of "just cause." _Id._ at 975-76.

As in this case, Westvaco argued that "the arbitrator abused his authority by ignoring the contractually guaranteed prerogatives of management" secured in the collective bargaining agreement.[6] _Id._ at 974. But, as in this case, "the interpretation of a collective bargaining agreement is a matter left to the arbitrator." _Id._ at 975. And, this principle applies "even when the arbitrator's interpretation resolves a question relating to the scope of the arbitrator's own authority." _Id._   As such, it is neither this Court's nor United's interpretation of "just cause" that is at issue here. All this Court may review is whether the arbitrator's conclusions are plausibly based upon the collective bargaining agreement. In _Westvaco_, the Fourth Circuit concluded that

---

[6] Plaintiff does not account for _Westvaco_ in any of its briefings except for one paragraph in its reply where Plaintiff asserts that "the issue is not whether the Arbitrator substituted his judgment for that of management…but whether in making his decision the Arbitrator 'did not do his job[.]'" (Pl's Reply at 15-16.) The Court is not persuaded by Plaintiff's surface-level attempt to distinguish _Westvaco_ from the case at hand. The issue in both cases is whether the arbitrator exceeded his jurisdiction in overturning the company's employment termination decision based upon his interpretation of "just cause."

the arbitrator's just cause analysis was plausibly permitted by the collective bargaining agreement even though the agreement's language expressly prohibited the arbitrator from substituting its judgment for that of the management's. Accordingly, *Westvaco* would require this Court to uphold Arbitrator Fishgold's award *even if* the agreement contained such a provision expressly prohibiting the very conclusion the Board reached.

## B.   United Cannot Attack the Arbitration Simply Because It Dislikes the Outcome

United's attack on the arbitrator's decision amounts to nothing more than an attempt to gain a second bite of the apple. It is well-settled that disagreement with an arbitration award does not warrant vacation of the award. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* United bargained for alternative dispute resolution, and it must be bound by its own bargain. Although United has not waived its arguments, as ALPA contends, United did not properly raise its "subtle retaliation" argument until the instant motions, and therefore cannot now complain of the arbitrator's application of federal law over the Guidelines.[7]

At oral argument, United claimed it could not have predicted that Arbitrator Fishgold would apply federal law over the "subtle retaliation" Guidelines language. But, United had every opportunity to dissent to the arbitrator's application of federal law and simply neglected to do so. ALPA cited to federal law defining "retaliation" in its opening statement to the Board and in its

---

[7] United maintains that the "arbitration record shows that United's consistent position…was that Capt. Lee's email to Ms. Brown violated the Retaliation Policy and on that basis constituted just cause for termination." (Pl's Reply at 3, 31-34.) To support this contention, United notes that it has cited language from the Guidelines' Retaliation Policy in its correspondence and briefings throughout this dispute. (*Id.*) Referencing the Guidelines, however, is not the same as arguing their applicability over the applicability of other law.

post-hearing brief. (JA at 141-42.) In response, United neither objected to ALPA's reference to federal law in its own brief, nor filed a response to ALPA's brief.

Rather than object to ALPA's use of federal law, United gave credence to ALPA's purported retaliation elements. United argued in its post-hearing brief that Captain Lee's email constituted retaliation because he actually "did have the authority the Union denies he had, and unfortunately abused it to retaliate against Ms. Brown." (JA at 117.) Specifically, United argues that Captain Lee certainly retaliated against Flight Attendant Brown because he could have removed her from his plane. (JA at 116-17.) Moreover, United's only reference to the "subtle retaliation" language in its post-hearing brief is in a block quote citing all the relevant Guidelines. (JA at 108-09.) United could have objected to ALPA's citation to federal law and the EEOC standard or clarified its belief that the only proper analysis was through application of the Guidelines' standards. Instead, United chose to entertain the merits of ALPA's arguments premised on federal law.[8] Given United's failure to articulate any issue with the application of external law to the Board, despite the evolving dialogue around federal law, any failure of the Board to make a "subtle retaliation" argument is understandable.

## V.   CONCLUSION

As Arbitrator Fishgold acknowledged, Captain Lee "showed a lack of judgment and professionalism" in sending the email to Flight Attendant Brown. (JA at 213.) Regardless, retaliation requires more than faulty judgment, as does vacating an arbitration award. This Circuit has recognized that "arbitration must be final to be effective," which is dependent "on a

---

[8] United contended for the first time in its reply brief, and then again at oral argument, that its argument explaining that Captain Lee's email met even the more narrow standard under federal law was merely an argument "*in the alternative*" and that it in no way meant to accept ALPA's argument. (Pl's Reply at 33.) The Court finds United's last-ditch effort to relitigate issues it declined to raise before the arbitrator unavailing.

limited scope of judicial review[.]" *Westvaco*, 171 F.3d at 974; *Richmond, Fredericksburg & Potomac R. Co.*, 973 F.2d at 279. Accordingly, this Court lacks the authority to disturb the bargained-for arbitration regime between United and ALPA in this instance.

Upon review of the filings and exhibits, the Court DENIES Plaintiff's Motion for Summary Judgment (Dkt. 22); GRANTS Defendants' Motion for Summary Judgment (Dkt. 24); and AFFIRMS the Board's decision. An appropriate Order will follow this Opinion.

/s/

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

November 3, 2020
Alexandria, Virginia